UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SAMANTHA FISHER<br>Plaintiff | )<br>)<br>)<br>)<br>) |  |
| v. | )<br>)<br>) | Civ. Action No. 0312321-GAO |
| AT&T BROADBAND<br>Defendant | )<br>)<br>)<br>) |  |

### AFFIDAVIT OF VICKI CARABELLO
### IN SUPPORT OF AT&T BROADBAND'S
### MOTION FOR SUMMARY JUDGMENT ON ALL COUNTS

I, Vicki Carabello, state that the following is true and accurate based upon my personal information and belief.

1. I was employed with AT&T Broadband, its predecessors and successors, ("the Company"), from in or around April 1986 until in or around January 2003.

2. Beginning in or around 1990, I became the Senior Program Manager for nine towns, including Hanson, West Bridgewater, East Bridgewater and Whitman.

3. In or around June 1998 until April 1999, I supervised Samantha Fisher, who worked as the Access Coordinator for the Whitman and Hanson studio, and the assistant Access Coordinator for the West Bridgewater studio. Pursuant to an agreement with the individual towns, the Company provides town residents a studio, equipment and technical support so that a town resident can produce a television show. These television shows are called community access programs. The Access Coordinator is not allowed to work on these shows, but instead trains and provides technical support for the resident users.

4. Sometime in the middle of 1998, I became aware that there was a cooking show being produced at the West Bridgewater studio. The landlord of the studio contacted and informed me that he found a propane tank in the studio. I then learned that a set and cooking apparatus for a cooking show had been installed and used in the studio without my permission.

5. The propane tank was removed. In order for the show to continue, a special electrical connection and a venting mechanism were installed and approved by the Company, the West Bridgewater Fire Department, and the landlord.

6. I was told that Michelle Miller, a West Bridgewater resident, was the producer of the cooking show. Robert Branczewski was one of the cooks on the show. After I was notified about the show, Robert Branczewski began making complaints to me about Brian Liss and the quality of his work. Brian Liss was the Access Coordinator for the West Bridgewater studio. In response, Brian Liss informed me that Robert would boss people around and that, other than Michelle Miller and Robert Branczewski, there were no other crew members.

7. I began to notice on both Samantha Fisher's and Brian Liss' time sheets that they were spending an inordinate amount of time working on the cooking show. I reminded both Samantha Fisher and Brian Liss that it was not part of their job to work on the cooking show but rather to train and provide technical support when needed.

8. In or around January/February 1999, Michelle Miller left the show. I also learned that Robert Branczewski and Samantha Fisher had begun to see one another socially, in a "dating" relationship.

9.   On February 22, 1999, I met with Samantha, Robert Branczewski and Brian Liss about the cooking show. Everyone involved in this meeting was given an opportunity to speak. During the meeting it became very apparent that the show violated one of the Company's requirements regarding community access programs. The producer of a community access program must be a resident of the town in which the show is being produced. It has always been the Company's intent that the community studios were set up for use by the town residents.

10.  It was very apparent that Robert Branczewski was producing the show. Because he was not a resident of Bridgewater, I told him that he could no longer produce the cooking show in the Bridgewater studio. At first Robert Branczewski became upset and confrontational, but calmed down after he read the Access Agreement.

11.  During this meeting, I again reiterated to Samantha Fisher and Brian Liss that as Access Coordinators they were not allowed to work on a community access program. Samantha Fisher understood that the producer of a community access program needed to be a resident of the town and also understood that it was not her role to work on community access programs.

12.  At the close of the meeting, I informed the attendees that the cooking show could no longer continue at the Bridgewater studio. We agreed that they could edit and run the footage that had already been filmed. Robert Branczewski agreed to remove his equipment in a timely fashion.

13. Because of the residency requirement, I told Samantha Fisher that Robert Branczewski could not produce his show at the Whitman studio.

14. Because Robert Branczewski was a resident of Brockton, I provided him with the number of the AT&T studio in Brockton. I then called the Brockton studio and confirmed that he would in fact be able to do the show in the Brockton studio.

15. Although not part of her job, Samantha Fisher assisted in the removal of the cooking set and with the removal of the set's wiring.

16. Thereafter, "Cooking Creatively" was not produced out of the West Bridgewater studio.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY ON THIS THE ___ DAY OF JUNE 2005.

*Vicki Carabello*
Vicki Carabello

Certificate of Service
I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail/by hand.
Date: 7/1/05 LHK