UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

SAMANTHA FISHER,
**Plaintiff**

v.                                                     Civil Action No. 0312321 (GAO)

AT&T BROADBAND,
**Defendant**

### PLANTIFF'S OPPOSITION TO DEFENDANT'S
### MOTION FOR SUMMARY JUDGMENT

The defendant, AT&T Broadband (hereinafter "AT&T") has filed a motion for summary judgment alleging that, even viewing the facts in a light most favorable to the Plaintiff, Samantha Fisher (hereinafter "Fisher"), Defendant is entitled to judgment as a matter of law. Defendant relies on the following specific grounds in support of its position. "Fisher misplaced loyalties result in a breach of trust." Defendant states that 1) Fisher allowed alterations to the Holbrook studio (to wit: installation of an electrical line and stove) without proper authorization (an act which is admitted by the Plaintiff who was given a final written warning, Exhibit "C" to Duchaney affidavit); 2) Fisher "was working on the cooking show" and was promoting her boyfriend's television cover (i.e. Robert Branczewski) resulting in a divided loyalty; 3) Fisher allowed a media interview to occur in the studio; and 4) Fisher miscommunicated her supervisor's directive in ending the cooking show. Defendant also maintains that Plaintiff's state law claim for wrongful termination is without merit; her termination does not establish gender discrimination; and the decision was made for legitimate, non-discriminatory business reasons and not due to Plaintiff's gender.

Plaintiff opposes Defendant's motion for summary judgment on the following grounds:

first, material disputed facts exist regarding whether or not Plaintiff's actions, even if true, violated the Defendant's policies and procedures then in effect (see Tab 3 and Plaintiff's Record of Material (PEG September 2000); Exhibits D and E to Affidavit of. Duchaney/respectively, Employee Handbook; and Business Integrity and Ethics).  Second, Plaintiff's state law claim has merit based on Plaintiff's reliance on the Defendant's express representations in its published policies and procedures.  Third, the Defendant's preferred legitimate business reasons are simply a pretext for discrimination in that Defendant, through its male supervisor, Al Duchaney, held Plaintiff accountable to be unwritten "spirit" interpretation of its policies and procedures; favored a male producer (Gary Machaby) over the Plaintiff (even where that producer engaged in misconduct and abusive behavior towards Plaintiff); and replaced Plaintiff after her termination with a male employee.  Thus, Summary Judgment is inappropriate concerning Plaintiff's claims of employment discrimination based on State and Federal law.

## Plaintiff's Statement of Disputed Material Facts

Plaintiff's Statement of Disputed Material Facts and Record of Material in support thereof, are filed separately herewith.

## Legal Argument

I.    Standard of Review

Summary Judgment is a method for promptly disposing of actions in which there is no genuine issue as to any material fact. (Advisory committee notes FRCP 56.) In considering a motion for summary judgment, a court looks for two things: (1) a total absence of genuine dispute as to any material facts; and (2) a resultant rule of law (statutory or decisional) compelling a decision for one party or the other. The moving party bears the burden of convincing the court's mind on each point. (See, Hub Associates V. Goode, 357 Mass. 449, 258 N.E. 2d 773 (1970). The prior fact need not be concerned with the credibility of affidavits or the weight of the evidence (See, Camerlin v. New York Central R. C. o., 199 F. 2d 698 (1st Cir. 1952). Further, facts and inferences to be drawn therefrom must be viewed in the light most favorable to the party opposing the motion (Hub Associates v. Goode, Supra.) In a gender discrimination case, since discriminatory motive or animus is a material fact, and since state of mind is difficult to prove, the court must be circumspect in granting summary judgment (See, Poller v. Columbia Broadcasting System, 368 U.S. 464, 82 S.Ct 486, 7 L.E.d2d 458 (1962). As will be seen from the documents submitted by plaintiff, at least several issues of material fact exist in this case; therefore, summary judgment is not appropriate and the defendant's motions should be denied.

I.    Issue of Material Fact Exist

Defendant's motion for summary judgment should be denied as several issues of material fact exist which directly bear on the ultimate determination concerning the merits of

Plaintiff's claims.

After becoming the Access Coordinator for the Holbrook Studio in the Spring of 1999, Samantha Fisher (hereinafter "Fisher") told Robert Branczewski (hereinafter "Branczewski") that he needed to "find a producer from Holbrook if he wanted to film [the cooking show] there" (depos. of S. Fisher (67)). Branczewski worked with the mother of one of the boys who was interested in volunteering at the Holbrook Access Studio. Brett Rouse knew the boy whose mother worked with Branczewski. Brett Rouse expressed an interest to Fisher on working on the cooking show. (Despos. of S. Fisher (49-50)). PEG Access Policy guides uses of the Studio. Terms such as "Access user", "resident," and "producer" are defined therein "see PEG Access Policy (revised September 2000)). The boys would not only film the cooking show but also would pick the recipes and chose the host (Depos. of S. Fisher (71, 75-76)). Al Duchaney, Fisher's supervisor, visited the Holbrook Studio and approve the cooking set and received the signed Access user agreements signed by everyone involved with the show. (Depos. S. Fisher (81-82, 89)). Because the boys were minors, the parents of the boys cosigned the Access user agreements (Depo. S. Fisher (95)).

The cooking set was portable and could be pushed back in the Studio to allow other programs to air (Depos. S. Fisher (100-101, 145)). Fisher, as the cable Access Coordinator did not work directly on the cooking show or any other Access production (Depos. S. Fisher (144, 147)). Fisher had permission from her supervisor, Al Duchaney to work on some cooking events outside of the Studio (Depos. S. Fisher (122-125, 146-147, 156-157, 161)).

After her assignment to the Holbrook Studio, Al Duchaney was aware of Fisher's social

relationship with Branczewski, one of the hosts of the cooking show, suspected that Fisher was impermissably working on the cooking show and/or neglecting the other Access producer, Gary Machaby, who was quite vocal in his complaint against Fisher. Al Duchaney used Gary Machaby as his main source of information concerning Fisher's alleged involvement in the cooking show (Depo. A. Duchaney (85)). Even though Fisher assured Duchaney that she was not working on the cooking show, Fisher was terminated on November 21, 2000 for three reasons according to Duchaney, to wit: 1) violation of the defendant's media policy (having a reporter in the studio); 2) engaging in acts constituting a conflict of interest between her job and her relationship with Brancezewski; and 3) miscommunicating Duchaney's directive to end the cooking show to the crew of the show alleging causing the boys to quit because of the requirement to have parental involvement (Depo. A. Duchaney (91)). Duchaney drew the false conclusion based on the "spirit" rather than the "letter" of the PEG Access Policy in effect at the time (Revision September 2000). Duchaney inferred that Branczewski was the "producer" and that this was unacceptable because Branczewski was "resident." (Depos. A. Duchaney 110-114.) In fact, Branczewski, even if he were the producer, met the residency requirement because he worked for a local newspaper, which would qualify him under the then definition of resident as being a member of an organization which served the town. (Depos. A. Duchaney (135-140)).

Duchaney contends that Fisher violated the Ethics Policy concerning the media because she allowed a newspaper reporter to be present in the Studio to interview the crew of the cooking show. Fisher maintains that she did not violate the Ethics Policy regarding the media because she did not schedule nor participate in the newspaper interview in November, 2000. (Depos. A. Duchaney (160-163)). During the interview, Gary Machaby a male producer of another Access show was verbally abusive towards Fisher in the presence of not only newspaper report on but

other members of the public in violation of the PEG Access Policy (Depos. A. Duchaney (65-66, 71, 131-134) and (PEG Access Policy (Revised September 2000)). Duchaney admits that he never spoke and/or disciplined Gary Machaby for his outburst even though it violated the Access User Policies.

After Duchaney made the decision to end the cooking program, Fisher communicated accurately to the boys that in order for any of them to be a producer of the show, a parent would need to be involved and take responsibility; therefore, she did not engage in miscommunication regarding the ending of the cooking show (Depos. A. Duchaney (174-176)). Fisher did not oppose Duchaney's decision to end the cooking show; rather, she carried out his directive as ordered (Depo. A. Duchaney (Vol. II) (10)).

Fisher was subsequently replaced by a male employee who, was transferred from another studio.

In this regard, Plaintiff and Defendant have opposite interpretations of material facts of this case which are:

1. did the boys qualify as producers of the cooking show;
2. if not, did Branczewski qualify through his employment with the local paper as a producer of the cooking show;
3. did Fisher impermissively work on the cooking show either in the Studio or on outside events;
4. did Fisher violate the media provision of the Ethics Policy when allowing a newspaper reporter to interview members of the public when Fisher did not schedule or participate in

    the interview;

5.    did Fisher miscommunicate the directive of Duchaney to end the cooking program?

### III.   Merits of Plaintiff's Claims

Plaintiff has brought three claims against the Defendant. Each one will be examined to determine whether or not Summary Judgment is an appropriate resolution.

    Plaintiff has brought claims for one wrongful termination:; Discrimination based on state law (Massachusetts General Laws Chapter 151B, Section 1 et seq.); and discrimination based on Title VII & the Civil Rights Acts 1964. Plaintiff has established a prima facie case for wrongful termination under state law because the Defendant has violated the covenant of good faith and fair dealing in terminating Plaintiff's employment based on the interpretation by her supervisor, Al Duchaney, of the Employers Polices and Procedures rather than the express language of those written policies and procedures. Plaintiff at all times was attentive to the limitation of her role as Cable Access Coordinator and, other than the installation of the electric line and stove for which she accepted full responsibility she carefully avoided any conflicts of interest or ethical violations. Unfortunately, she was unable to survive in an atmosphere governed by her supervisor's situational interpretation of the policies; the animosity implied and expressed, towards her by Gary Machaby,; and the lack of training regarding the perimeters of interaction with the media based on the limited language of the Ethical Policy.

    Turning next to Plaintiff's claims of employment discrimination based on gender

subject to state and federal law, under the burden shifting analysis of the case, McDonnell Douglas Corp., 411 US 792 (1973) and relevant state laws cases which have adapted this analysis, Fisher has made a prima facie case of employment discrimination based on gender. Fisher has shown 1) she is a member of a protected class (female); 2) she was performing her job in a suitable level (for the reasons set forth in Plaintiff's statement of disputed facts, which facts must be viewed in the light most favorable to the Plaintiff); 3) she was subject to an adverse personnel action (termination); and 4) she was replaced by a person of the opposite gender (male). Having made a prima facie case of discrimination now the burden then shifts to the Defendant to articulate a legitimate, nondiscriminatory reason for the adverse personnel action against the Plaintiff. Because, in the light most favorable to the Plaintiff, Defendant cannot articulate facts which would lead a reasonable finder of fact to believe that the Plaintiff violated any of the Defendant's policies regarding 1) Access users and producers regarding the cooking show; violations of conflict of interest whereby she either worked on the cooking show, favored the cooking show over other producers, and/or worked on events outside of the Studio regarding the cooking show without the permission of her supervisor; and 2) that she allowed unauthorized media representatives to engage in activities prohibited by the Ethics Policy. The Defendant's claims that the Plaintiff violated its employment policies must fail as a legitimate nondiscriminatory reason for terminating Fisher's employment because the facts in light most favorable to the Plaintiff show that the Plaintiff left her previous position with the employer in the Spring of 1999 because she had been harassed (record is unclear as to whether or the harassment by Brian Liss was sexual in nature or not), that she had begun a social relationship with Branczewski which continued when she accepted the new position at the Holbrook Studio. When Branczewski expressed an interest establishing a cooking show in Holbrook, Fisher told him he needed to find a resident to be producer, but a group of

resident boys had expressed an interest in working at the Studio and joined with Branczewski to be the producers of the cooking show with Branczewski and others being host talent, Gary Machaby, a male producer of another show, strongly resented not only the cooking show but Fisher's relationship with Branczewski even though no objective facts occurred which would give rise to any conflicts of interest.  Machaby complained vigorously to Duchaney (Fisher's new supervisor) who did not engage in any investigation of the allegations and even allowed Machaby to act abusively towards Fisher without recourse; using this incident to precipitate Fisher's demise.  Duchaney ultimately made his own determination that Branczewski was the producer of the cooking show and ordered the show to be shut down to which Fisher complied.  Fisher was then replaced by a male employee.

## CONCLUSION

In summary, because so many material facts are disputed; and due to the Plaintiff's establishment of prima facie cases regarding all counts of her complaint, Plaintiff respectfully requests that the court deny the Defendant's Motion for Summary Judgment.

|  |  |
|---|---|
| January 30, 2006 <br> Date | */s/ David O. Scott, Esquire* <br> DAVID O. SCOTT, ESQUIRE <br> B.B.O. NO. 449165 <br> LAW OFFICE OF DAVID O. SCOTT, P.C. <br> 200 CHAUNCY STREET <br> MANSFIELD, MASSACHUSETTS 02048 <br> TELEPHONE (508) 261-9777 <br> dsesq@aol.com |

**Certificate of Service**

      I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).  No non-participants (NEF) as noted.

|  |  |
|---|---|
| January 30, 2006<br>Date | */s/ David O. Scott, Esquire*<br>DAVID O. SCOTT, ESQUIRE<br>B.B.O. NO. 449165<br>LAW OFFICE OF DAVID O. SCOTT, P.C.<br>200 CHAUNCY STREET<br>MANSFIELD, MASSACHUSETTS 02048<br>TELEPHONE (508) 261-9777<br>dsesq@aol.com |